UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JENNIFER DANIEL,

Plaintiff,

v. Case No. 8:25-cv-02452-NHA

COMMISSIONER OF
SOCIAL SECURITY,

Defendant.
_______________________________/

# ORDER

Plaintiff challenges the March 5, 2024 denial of her claim for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB). She argues that three errors warrant reversal. First, Plaintiff argues that the Administrative Law Judge (ALJ) erred in finding that she could perform light work, because the record demonstrates that her back problems preclude light work. Doc. 19 pp. 3–9. Second, Plaintiff argues that the ALJ failed to fully develop the record, because the consultative evaluation conducted by Dr. Milan Patel did not include a medical opinion as to Plaintiff's residual functional capacity (RFC). Doc. 19 pp. 9–12. Third, Plaintiff argues that, in crafting Plaintiff's RFC, the ALJ failed to account for the opinions of two state agency psychological consultants, who opined that Plaintiff had several "moderate" mental limitations. Doc. 19 pp. 12–15.

After carefully reviewing the parties' briefs and the administrative record, I reverse to allow the ALJ to clarify or amend his findings about the persuasiveness of the prior administrative findings, which he relied on to support his conclusions as to Plaintiff's RFC.

## I. Background

Plaintiff is a 49-year-old woman with a tenth-grade education and work experience as a cashier, construction worker, and amusement park performer. R. 316, 393. On December 15, 2022, she applied for DIB and SSI, claiming she was disabled due to depression, PTSD, anxiety, and back problems. R. 316, 326, 392. Plaintiff initially alleged that she became disabled on November 1, 2022, but acknowledged that she was still working as a cashier at that time. R. 316, 392–93. Plaintiff later amended her claimed disability-onset date to July 1, 2023. R. 39.

### a. Procedural History

The Social Security Administration first denied Plaintiff's applications for SSI and DIB on March 5, 2024 (R. 139, 154) and denied them again after reconsideration on September 12, 2024 (R. 181, 189). Plaintiff then requested a hearing before an ALJ (R. 196), which occurred on March 13, 2025 (R. 37). At the hearing, Plaintiff was represented by a non-attorney representative. R. 37, 292. Plaintiff and vocational expert William Harvey testified. R. 43, 54.

In the post-hearing decision issued on April 25, 2025, the ALJ concluded that Plaintiff was not disabled, because she could perform jobs that existed in significant numbers in the national economy. R. 17–28. Plaintiff requested a review of the ALJ's decision from the Appeals Council, which it denied on July 10, 2025. R. 1.

Plaintiff then timely appealed the decision to this Court. Doc. 1. Plaintiff filed a brief opposing the Commissioner's decision (Doc. 19), and the Commissioner responded (Doc. 24). Plaintiff did not file a reply. The case is now ripe for review.

b. Facts Relevant to Plaintiff's Claims

On appeal, Plaintiff raises three issues. Two of her objections relate to the ALJ's treatment of her back and skeletal problems. She argues first that the medical opinions in evidence demonstrate that her mobility issues preclude light work, and second that the ALJ was required to further develop the record by obtaining an opinion from Dr. Patel regarding her RFC. Doc. 19 pp. 3–12. The third argument concerns Plaintiff's mental impairments. There, she contends the ALJ failed to properly consider the opinions of Drs. Mike Dow and Michelle Butler, two state agent psychological consultants, who found that Plaintiff had moderate limitations in three areas of mental functioning. Doc. 19 pp. 12–15.

Facts relevant to these claims follow.

i. Evidence Regarding Plaintiff's Back Health

In November 2019—more than three years before she alleges her disability period began—Plaintiff obtained an MRI of her lumbar spine. R. 510–11, 876–77. The MRI showed disc herniation and "moderate to severe canal stenosis"[1] at L5-S1; an "annular tear[2] with disc herniation" and disc bulge at L4-5; disc herniation at L2-3; and chronic but slight disc bulge at L3-4. *Id*. The MRI of her thoracic spine, taken on the same day, showed scoliotic curvature and disc desiccation at T8-9. R. 878.

In 2020 and 2021, two to three years prior to the disability onset date, Plaintiff made several visits to physicians at Family Medical Center of Port Richey for back pain. R. 883–910. Dr. Adam Greenfield, DO, recorded in November 2020 that Plaintiff had "chronic neck and lower back pain," noting the results of the 2019 MRI. R. 907. Dr. Greenfield observed "spasms or tenderness" in Plaintiff's back upon examination, and prescribed Plaintiff Ultram (tramadol) for pain management. R. 907–10. The next month, Plaintiff returned to Dr. Greenfield, and he recorded her report that she experienced

[1] Canal stenosis, or spinal stenosis, occurs when the canal within the backbone narrows, putting pressure on the spinal cord and nerves within it. *See Spinal stenosis*, MAYOCLINIC.ORG, https://www.mayoclinic.org/diseases-conditions/spinal-stenosis/symptoms-causes/syc-20352961.

[2] An annular tear is a tear is in a spinal disc's thick outer wall. *See* SCIENCEINSIGHTS.ORG, https://scienceinsights.org/what-is-an-annular-tear-causes-types-treatment/.

"4–5/10" level pain from her "severe disc herniations," which caused "problems going up and down stairs." R. 903. In January 2021, Dr. Greenfield noted "decreased spasms or tenderness" in Plaintiff's back. R. 901.

In March 2021, Plaintiff saw a different physician at the clinic, whom Plaintiff told, "Ultram doesn't help her at all," while expressing frustration that the doctors hadn't fixed her back issues. R. 891. In August 2021, Dr. Greenfield noted that Plaintiff had fallen a month prior and was having "problems walking," and prescribed Plaintiff codeine for her pain. R. 887, 890. Later that month, Dr. Greenfield wrote that opioid medications had led to a 30% decrease in Plaintiff's back pain. R. 883. Also in August 2021, Plaintiff received an x-ray of her lumbar spine, which showed "mild degenerative disease." R. 505.

In May 2023, Plaintiff got in a car accident, and was admitted to the emergency room with pain in her head, chest, neck, and back. R. 630. She received CT scans of her head, chest, and back with no notable results, and was discharged from the hospital the same day. R. 633–35. Plaintiff alleges she became disabled soon after this car accident, on July 1, 2023. R. 39.

In July 2023, Plaintiff visited a chiropractor's office, reporting neck and back pain that had worsened since her May 2023 car accident. R. 656. The chiropractor performed a range of motion test indicating that Plaintiff had a "significant decrease of normal range of motion" in multiple areas in her back,

and noted that several back movements caused Plaintiff pain. R. 658. Over the second half of 2023, Plaintiff regularly received chiropractic treatment but continued to report severe back pain. R. 661–738.

In August 2023, Plaintiff received another MRI of her back, this time only of the lumbar region. R. 873. The 2023 MRI showed the same results as the 2019 MRI, except that the disc herniation in one part of Plaintiff's spine, at L5-S1, was now extended "more so to the left of the midline . . . since the prior study." R. 874.

In February 2024, during the SSA's initial consideration of Plaintiff's disability applications, she was sent to Dr. Milan Patel, MD, for a consultative evaluation. R. 800. Plaintiff reported to Dr. Patel that doctors had recommended surgery for her back pain, but that she had not gotten surgery; that chiropractic treatment had been ineffective; and that she was not taking pain medication. R. 800. Documenting Plaintiff's self-reported "functional limitations," Dr. Patel wrote that Plaintiff could only sit or stand for five minutes at a time and could walk "not far." R. 801.

Upon physically examining Plaintiff, Dr. Patel concluded that she had a "symmetric, steady gate" without using an assistive device;[3] had no muscle

[3] Dr. Patel's findings indicate both that Plaintiff had a "symmetric, steady gate," and an "antalgic gate," meaning she modified her gait to accommodate for pain.

spasms; could lift and carry light objects and perform fine motor skills; and could rise from a seating position without assistance. R. 803. On the other hand, the physical exam showed that Plaintiff had moderate difficulty getting up and down from the exam table; could not squat and get back up; could not "walk on heels and toes"; "tandem walking was abnormal"; could not hop on one foot; and had limited range of motion in her lumbar spine and hips. R. 803, 805. Summarizing his findings as to Plaintiff's "chronic back pain and sciatica," Dr. Patel wrote:

> She has an antalgic gait, cannot tandem walk, cannot squat and has difficulty rising and lowering to a sitting position. She has a positive straight leg test bilaterally and MRI results have demonstrated degenerative disc disease. She has intact reflexes but weakened muscle strength bilaterally as shown on physical exam. She's a decreased range of motion at the hip joint and the knee joint bilaterally, which make it difficult for her to perform movements and have made her ability to perform tasks at a job extremely difficult. She did not use a cane during the exam, but she states she does use it at home from time to time. She did not have significant joint swelling tenderness, heat or redness, nor did she have any thickening of the joints examined on physical exam. She was not able to raise her arms fully over her head, and she did have difficulty with maneuvering her lumbar spine. This was evidenced on physical exam.

R. 803–04. Dr. Patel's report does not include a formal evaluation of Plaintiff's residual functional capacity, but he did note that her range of motion limitations "make it difficult for her to perform to movements [sic] and have made her ability to perform tasks at a job extremely difficult." R. 803.

Two state agency medical consultants, Drs. Christine Booth and Frank Walker reviewed the medical evidence in the record and opined as to Plaintiff's RFC. In February 2024, Dr. Booth opined that Plaintiff could occasionally lift or carry 20 pounds and frequently lift or carry 10 pounds; could stand or walk for four hours a day with normal breaks; could sit for six hours a day with normal breaks; could only occasionally lift, climb, balance, stoop, kneel, crouch, or crawl; and must avoid concentrated exposure to vibration, machinery, and heights. R. 72–73. In September 2024, Dr. Walker reviewed the medical evidence in the record and made an identical RFC recommendation. R. 107–08.

In August 2024, while the SSA was considering her disability claims, Plaintiff completed a function report with the assistance of her representative. R. 441–48. Plaintiff wrote that her back pain prevented her from sitting or standing for extended periods of time and that she could not do any chores because of the combination of her physical and mental impairments. R. 441–43. Plaintiff stated that she used to garden, but no longer could, and thus she had no hobbies. R. 445. On a checkbox portion of the function report that asked which of her abilities were affected by her impairments, Plaintiff checked every box except "talking," explaining that her back pain made it difficult to lift, sit, squat, bend, stand, reach, walk, sit, kneel, climb stairs, and generally complete tasks. R. 446.

At a hearing before the ALJ, Plaintiff testified that her back problems prevented her from lifting more than a pound, sitting or standing for more than five or ten minutes at a time, or walking further than five feet at a time. R. 44–45. She testified that she used a cane a friend gave her. *Id.*

ii. Evidence Regarding Plaintiff's Mental Health

Between 2021 and 2025, Plaintiff consistently sought and received mental health treatment for major depressive disorder, generalized anxiety disorder, and PTSD. R. 595–624, 740–99, 809–71. In November and December 2021, Plaintiff reported moderate depression and severe PTSD symptoms to psychiatrist Dr. Ahmed Qureshi. R. 613–16. Plaintiff had been prescribed Cymbalta and Seroquel, and, in December 2021, Dr. Qureshi increased her Seroquel dose to help with "mood augmentation/sleep." R. 614.

In February and March 2022, Plaintiff complained more of anxiety, as well as PTSD-associated nightmares and flashbacks, and Dr. Qureshi transitioned her from Cymbalta to Zoloft. R. 608–13. In three appointments between May and July 2022, Plaintiff reported to Dr. Qureshi that Zoloft was helping with her mood, and Seroquel was helping her sleep. R. 603–608. However, in September 2022, Plaintiff stated that she was having difficulty controlling her anger at work as a cashier at Circle K, and in November, Plaintiff told Dr. Qureshi that she'd been fired after an argument with her boss. R. 600–03. Dr. Qureshi included a "Mental Status Exam" in his treatment

notes from each of his appointments, in which he always reported normal thought processes, memory, language use, attention, and judgment, but sometimes described Plaintiff's mood as "depressed," "down," or "anxious," and her affect as "anxious," "restricted," or "irritable." R. 600, 602, 603, 605, 607, 608, 610, 612, 614, 615.

Between 2023 (her alleged onset year) and 2025, Plaintiff attended talk therapy, where she discussed strategies for managing her anger and PTSD symptoms. R. 757–61, 778–84, 791–95, 826–30, 836–43, 863–68. In their "Brief Mental Status" evaluations within their session notes, Plaintiff's therapists, Maribel Rodriguez and Barbara Whitehead, consistently noted Plaintiff's normal thought processing, memory, and behavior, but noted a variable mood and affect. *See id.* Plaintiff also continued to see Dr. Qureshi during this time and, in February 2025, the latest mental health appointment in the record, Dr. Qureshi wrote that Plaintiff was "at goal" in terms of managing her PTSD and depression, but that she "continues to have major psychosocial stressors." R. 869. Dr. Qureshi's mental status exam at this latest appointment yielded all normal results. R. 869.

The record also includes Plaintiff's own descriptions of her mental health impairments. In the Function Report completed in January 2023, Plaintiff wrote that she was dealing with anxiety attacks, anger management problems, and difficulty "memorizing" and "counting correctly." R. 413, 416. Plaintiff

reported engaging in few social activities because she did not get along well with others and did not like crowds. R. 417. In her August 2024 Function Report, Plaintiff wrote that her mental health issues made her unable to work around other people. R. 441, 445. She also stated that the combination of her physical pain and her mental health issues made it difficult for her to concentrate and remember things. R. 446. Plaintiff described her ability to follow written instructions as "OK," and stated that she gets along "fine" with authority figures.

In February 2024, state agency psychological consultant Dr. Mike Dow, PhD., reviewed the record and offered an opinion about Plaintiff's mental limitations. R. 74. Dr. Dow evaluated 13 categories of potential mental limitations and found limitations in only three of them. R. 74. Specifically, Dr. Dow concluded that Plaintiff was "moderately limited" in maintaining attention and concentration for extended periods; in completing a workday and workweek without interruptions from psychological symptoms; and in accepting instructions and responding appropriately to criticism from supervisors. R. 74. Summarizing his conclusions, Dr. Dow wrote: "She can sustain simple and detailed tasks. She has some difficulty with authority and she will on occasion be distracted by past trauma." R. 74.

In August 2024, state agency psychological consultant, Dr. Michelle Butler, PsyD, made the same conclusions about Plaintiff's mental limitations. R. 107–08.

At the 2025 hearing with the ALJ, Plaintiff testified that she still struggled with depression and anxiety, and that mental health medication was helpful sometimes, and sometimes not. R. 46–47. Plaintiff also testified that she struggled with memory and concentration, explaining that, for example, Plaintiff had trouble remembering certain key sequences she had to enter on the cash register when she worked at Wal-Mart. R. 47.

c. The ALJ's Decision

Pursuant to the five-step evaluation process for determining disability status (20 C.F.R. §§ 404.1520(a), 416.920(a)), the ALJ found that:

(1) Plaintiff had not engaged in substantial gainful activity since her (amended) alleged onset date of July 1, 2023, and that Plaintiff was insured through March 31, 2025. R. 20.

(2) Plaintiff had the severe impairments of degenerative disc disease; major depressive disorder; generalized anxiety disorder; and PTSD. R. 20.

(3) Plaintiff did not have any impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 21.

(4) Plaintiff could perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), with the additional limitations that she could only stand or walk for four hours in an eight hour workday; could only occasionally balance, crouch, crawl, kneel, stoop, and climb ladders, ropes and scaffolds; must avoid dangerous machinery and unprotected heights; could perform only simple tasks; and could have only occasional interaction with the public, coworkers, and supervisors. R. 23.

(5) Plaintiff could perform jobs that existed in significant numbers in the national economy, specifically the jobs of mail clerk, merchandise marker, and office helper. R. 26–27.

Based on his finding that Plaintiff could perform jobs available in substantial numbers in the national economy, the ALJ concluded that Plaintiff was not disabled. R. 27–28.

## II. Standard of Review and Applicable Law

The Court reviews the ALJ's decision with deference to its factual findings, but no deference to its legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002) ("With respect to the Commissioner's legal conclusions, . . . our review is *de novo*."). The Court must uphold a determination by the Commissioner that a claimant is not disabled if the

determination is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 597 U.S. 97, 103 (2019).

Substantial evidence is merely "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curium)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). In other words, the Court is not permitted to reweigh the evidence or substitute its own judgment for that of the ALJ, even if the Court finds the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

That said, the ALJ must state the grounds for his decision with enough clarity to enable the Court to conduct meaningful review of the standards he employs. *See Keeton*, 21 F.3d at 1066 (we must reverse when the ALJ has failed to "provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted"); *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984).

In making its decision, the Court must review the entire record. *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citing *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987)).

## III. Analysis

### a. The ALJ did not properly evaluate the persuasiveness of certain medical opinions.

Plaintiff first argues that the ALJ's RFC finding that Plaintiff could perform light work is unsupported by substantial evidence, because the evidence shows that Plaintiff is only capable of performing "less than sedentary work." Doc. 19 p. 4. However, Plaintiff does not dispute that the ALJ's RFC finding is supported by the state agency consultants' opinions, which both recommend the RFC that the ALJ adopted. Doc. 19 p. 3. Because prior administrative findings constitute "evidence" under SSA regulations, 20 C.F.R. § 404.1513(5), Plaintiff does not show that the ALJ's decision failed to clear the low bar of substantial evidence, where he relied on two prior administrative findings to support his RFC.

Upon closer examination of her argument, it appears Plaintiff mislabels the errors she asserts. Within her "evidentiary" challenge, Plaintiff actually argues that (1) the state consultants' medical opinions themselves failed to account for all of the medical evidence, and (2) the ALJ incorrectly stated that the opinions were consistent with the findings of another doctor, Dr. Patel. I

find that the second of these two objections requires remand to allow the ALJ an opportunity for further explanation.

i. The ALJ properly considered the results of Plaintiff's 2023 MRI.

Plaintiff first argues that, because the state agency medical examiners, Dr. Booth and Dr. Walker, did not consider Plaintiff's 2023 MRI, the ALJ did not properly consider the MRI in forming the RFC. Doc. 19 pp. 6–7.

A claimant's RFC is "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Social Security regulations require an ALJ to determine a claimant's RFC based on "all the relevant evidence in [the] case record." *Id.* After the ALJ reviews the evidence, "the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ." *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010).

Here, Plaintiff argues that the ALJ's improperly found that Plaintiff 's RFC included performing light work because, according to Plaintiff, the 2023 MRI results are inconsistent with that conclusion. Doc. 19 p. 4.

The ALJ found that Plaintiff was capable of performing some "light work," which is defined as work that involves lifting no more than 20 pounds, but that may involve frequently lifting up to 10 pounds, and that may require either "a good deal of walking or standing," or "some pushing and pulling"

while sitting. 20 C.F.R. §§ 404.1567(b), 416.967(b). The ALJ further reduced Plaintiff's RFC by finding that, in addition to her ability to perform only light work, she could only stand or walk for four hours in an eight-hour workday, and could only occasionally balance, crouch, crawl, kneel, stoop, and climb ladders, ropes, and scaffolds. R. 23. Altogether, the limitations in the ALJ's RFC for Plaintiff were precisely consistent with those proposed by the state agency consultants, Dr. Booth and Dr. Walker. *Compare* R. 23 *with* R. 72–73, 105–06.

Plaintiff argues that the ALJ should not have relied on the state agency consultants' RFC recommendations, because they did not review Plaintiffs' 2023 back MRI. Doc. 19 p. 6. Plaintiff is correct that Drs. Booth and Walker's reports omit reference to the 2023 MRI, but they did review the 2019 MRI (R. 68, 106) which showed almost identical results, except that in one specific area of the lumbar spine, the disc herniation extended "more so towards the left of midline" than it did in the 2019 MRI (R. 874). Plaintiff draws attention to this difference, but does not explain its significance or argue that the difference alone would have changed the state agency consultants' RFC recommendation. *See Moore,* 405 F.3d at 1211 ("An individual claiming Social Security disability benefits must prove that she is disabled.").

More importantly, the ALJ expressly considered the 2023 MRI (R. 24–25), and found Drs. Booth and Walker's opinions to be consistent with it (R25-

26). In a separate section of her brief, Plaintiff suggests this was inappropriate, because an ALJ's role is limited to weighing and comparing the opinions of doctors, and that ALJs may not themselves draw conclusions from medical evidence because an "ALJ is not a medical expert." Doc. 19 p. 12. But any suggestion that an ALJ is not qualified to directly consider the results of medical tests is plainly contradicted by 20 C.F.R. § 404.1513 and: among the five "categories of evidence" that the SSA considers in evaluating disability claims, one category is "objective medical evidence," such as "medical signs [or] laboratory findings," to be considered *alongside* "medical opinions" and other categories of evidence. 20 C.F.R. §§ 404.1513(a), 416.913(a). At the hearing level, the ALJ is responsible for evaluating each of these five categories of medical evidence to determine a claimant's RFC. *Id.* §§ 404.1546(c), 416.946(c). Here, because the ALJ himself considered the results of the 2023 MRI, and found it to be consistent with the state agency consultants' RFC conclusions—and because Plaintiff does not show that this conclusion was erroneous—Plaintiff fails to show that the ALJ disregarded relevant evidence.

ii. The ALJ did not sufficiently explain his evaluation of the prior administrative findings' consistency with other record evidence.

Plaintiff also attacks the ALJ's assertion that the prior administrative findings were consistent with those of Dr. Patel. Plaintiff points out that, in

contrast to Drs. Booth and Walker (and to the ultimate RFC finding), Dr. Patel opined that Plaintiff could not squat. Doc. 19 p. 6.

In evaluating medical opinions and prior administrative findings, an ALJ "will not defer or give any specific evidentiary weight . . . to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, such opinions and findings are evaluated based on how well they are supported, how consistent they are with other evidence, the source's relationship with the claimant, the source's specialization, and other factors. *Id.* §§ 404.1520c(a)–(c); 416.920c(a)–(c).

"The ALJ must articulate the consideration of the two most important factors: supportability and consistency." *Minnis v. Commr. of Soc. Sec.*, 2025 WL 974570 (11th Cir. 2025) (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)). As to "supportability," "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). As to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical

opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

Here, the ALJ found the state agency consultants' prior administrative findings (that plaintiff could perform light work with specific additional limitations) persuasive, and adopted their RFC recommendations, including that Plaintiff could occasionally crouch and kneel. R. 23, 25. The ALJ expressly found the findings persuasive, in part, because they were "consistent with and supported by the objective physical examination and testing findings reported by the claimant's own providers, and by Dr. Patel." R. 25 (citing Dr. Patel's February 2024 consultative examination).

But as Plaintiff points out, Dr. Patel found that Plaintiff "was not able to squat and rise from that position." R. 803. Although Drs. Booth and Walker acknowledged Dr. Patel's exam, they did not mention this specific finding. R. 73, 107. And despite Dr. Patel's conclusion that Plaintiff could not squat and stand back up, both state agency consultants recommended an RFC that allowed Plaintiff to occasionally crouch.[4] R. 73, 106.

[4] While perhaps not entirely interchangeable, "crouch" and "squat" are nearly synonymous verbs. Indeed, Merriam-Webster's dictionary defines "squat" as "to cause (oneself) to crouch or sit on the ground," or "to crouch close to the ground as if to escape observation." *Squat*, MIRRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/squat.

The ALJ was free to accept, modify, or reject the consultants' findings with reference to other evidence in the record. But in discussing (and ultimately mirroring) the state agency consultants' RFC recommendations, the ALJ stated that he found them persuasive, because they were "consistent with and supported by the objective physical examination and testing findings . . . by Dr. Patel." R. 25. Because Dr. Patel found that Plaintiff could not squat and stand back up, the ALJ's characterization of the opinions as consistent was not entirely correct.

The Court cannot say that this error was harmless, because the Court is unable to tell whether the ALJ considered the inconsistency between Dr. Patel's findings and those of Drs. Booth and Walker in evaluating the persuasiveness of the latter's opinions. If the ALJ did note the inconsistency, perhaps he believed Dr. Patel's finding was undermined by certain record evidence he did not cite. Perhaps he believed Plaintiff could use an assistive device to stand after crouching. Or, perhaps the ALJ did not note the inconsistency, and, upon noting it, would have found Dr. Booth and Dr. Walker's RFC recommendation only partially persuasive.

Because the ALJ did not explain whether or how he considered the inconsistency between Dr. Patel's findings and the prior administrative findings he characterized as consistent, his decision lacks sufficient clarity to enable the Court to conduct meaningful review of the standards he employed.

*See Keeton*, 21 F.3d at 1066 (we must reverse when the ALJ has failed to "provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted"). I, therefore, remand to allow the ALJ the opportunity for further explanation.

b. Plaintiff's remaining arguments do not independently warrant remand.

The Court notes that neither of Plaintiff's remaining arguments would independently require remand.

In Plaintiff's second assignment of error, she argues that the ALJ was required to obtain an RFC recommendation from Dr. Patel, to fully develop the record. R. pp. 9–12. But the SSA's regulations require only that a consultative examination (when the SSA chooses to obtain one) "be complete enough to help [the SSA] determine the nature, severity, and duration of the impairment, and [the claimant's] residual functional capacity"; they do not require that a consultative examiner himself craft an RFC recommendation. 20 C.F.R. §§ 404.1519n, 416.919n. Rather, it is the ALJ's responsibility to assess a claimant's RFC based on the evidence before him. *Id.* §§ 404.1546, 416.946; *Robinson*, 365 F. App'x at 999. Here, Plaintiff does not demonstrate that the ALJ lacked sufficient evidence to assess Plaintiff's RFC.

Third and finally, Plaintiff argues that the ALJ's RFC assessment failed to account for the state psychological consultants' opinion that Plaintiff had

"moderate" limitations in: performing at a consistent pace, completing a workweek without interruptions, and accepting instruction and criticism from supervisors. Doc. 19 pp. 12–15. But a psychological evaluator's indication that a claimant has "moderate" mental limitations "means only that the claimant's capacity is impaired; it does not indicate the degree and extent of the limitation," and the moderate impairment indication is not itself part of an RFC assessment. *Land v. Comm'r of Soc. Sec.*, 494 F. App'x 47, 49 (11th Cir. 2012) (citing POMS DI §§ 24510.060(B)(2), 24510.063(B)(2)). Here, the ALJ cited and considered these aspects of Drs. Dow and Butlers' opinions (R. 25) and accounted for them in his own RFC analysis by limiting Plaintiffs' work to "simple tasks" and allowing only "occasional interaction with the public, coworkers, and supervisors" (R. 23).[5] The ALJ thus sufficiently accounted for the state agency psychological consultants' opinions.

---

[5] To the extent Plaintiff also argues that the ALJ's mental functioning RFC was unsupported by substantial evidence, that version of the argument also fails. In Plaintiff's 2024 Function Report, she described her own capacity to follow written instructions as "OK," and stated that she got along well with authority figures "Fine," adding that she "stay[s] out of trouble." R. 446. At the hearing with the ALJ, Plaintiff stated that her muntal functioning had worsened, but also said that she writes things down to help her remember them, and that she still got along well enough with authority figures to stay out of trouble. R. 49–50. Plaintiff's own statements alone provide support for the ALJ's finding that she could follow simple instructions and occasionally interact with others at work.

## IV. Conclusion

In sum, the Court remands the case to allow the ALJ explain his consideration of the inconsistency between the findings of Dr. Patel and those of the state agency consultants.

Accordingly:

(1) The decision of the Commissioner is REVERSED and REMANDED for additional proceedings consistent with this order; and

(2) The Clerk of Court shall enter judgment in the Plaintiff's favor, terminate any pending motions, and close the case.

**ORDERED** on August 13, 2026.

Natalie Hirt Adams

NATALIE HIRT ADAMS
United States Magistrate Judge